# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 24-5269**

**September Term, 2025**

FILED ON: JULY 29, 2026

ALEXANDER R. KURSAR,
         APPELLANT

v.

DANIEL DRISCOLL, HONORABLE, SECRETARY OF THE ARMY,
         APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01974)

---

Before: MILLETT, PILLARD, and KATSAS,* *Circuit Judges*.

## J U D G M E N T

This appeal was presented to the court and briefed and argued by counsel. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that this case be **REMANDED** to the district court for further proceedings to ascertain the amount of damages the appellant seeks so that jurisdiction can be determined.

\*        \*        \*

Alexander Kursar, a former Army soldier and National Guard member, challenges the 2020 decision of the Army Board for Correction of Military Records ("Correction Board"). Mr. Kursar's complaint seeks, among other things, reinstatement of his Special Forces Tab—a symbolic icon representing a service member's Special Forces affiliation—and back pay and allowances in an unspecified amount. J.A. 57–62, 78–79. The Correction Board declined to

---

   \*   A dissenting statement by Judge Katsas is attached.

1

reinstate his Special Forces Tab or to award "backpay and allowances" associated with Special Forces status and related reserve-duty service. J.A. 78–79. The district court granted summary judgment in favor of the Secretary of the Army.

This case must be remanded because the unknown dollar amount of the back pay and allowances that Mr. Kursar seeks is determinative of the district court's and this court's jurisdiction.

Specifically, the Tucker Act, 28 U.S.C. § 1491, vests "exclusive jurisdiction" in the Court of Federal Claims over non-tort cases against the United States that seek more than $10,000 in "liquidated or unliquidated damages[.]" *Schwalier v. Hagel*, 734 F.3d 1218, 1220 (D.C. Cir. 2013) (quoting 28 U.S.C. § 1491(a)(1)).

The Little Tucker Act, 28 U.S.C. § 1346, meanwhile, vests concurrent jurisdiction in the Court of Federal Claims and federal district courts when a plaintiff brings a civil claim against the United States for money damages "not exceeding $10,000" and "founded either upon the Constitution, or any Act of Congress[.]" 28 U.S.C. § 1346(a)(2).

Together, those statutes mean that the district court had jurisdiction over Mr. Kursar's back pay and allowances claim for relief only if he sought $10,000 or less in monetary damages. *See Palacios v. Spencer*, 906 F.3d 124, 126–127 (D.C. Cir. 2018).

That same factual question also determines this court's appellate jurisdiction. The Court of Appeals for the Federal Circuit has "exclusive jurisdiction" over appeals from a federal district court "if the jurisdiction of that court was based, in whole or in part, on" the Little Tucker Act. 28 U.S.C. § 1295(a)(2); *see Schwalier*, 734 F.3d at 1220. That means we lack jurisdiction over Mr. Kursar's entire appeal if he is seeking $10,000 or less in damages. 28 U.S.C. § 1295(a)(2); *Van Drasek v. Lehman*, 762 F.2d 1065, 1068 (D.C. Cir. 1985).

The Federal Circuit also has exclusive appellate jurisdiction over all appeals from the Court of Federal Claims, including when it hears claims under the Tucker Act seeking more than $10,000 in monetary relief. 28 U.S.C. § 1295(a)(3). So if Mr. Kursar's claim for back pay and allowances amounts to more than $10,000 in compensation, we would retain jurisdiction over his *non-monetary* claims but would have to remand his monetary claims to the district court for dismissal for lack of jurisdiction. *See Palacios*, 906 F.3d at 126–127; *Doe v. Department of Justice*, 753 F.2d 1092, 1101–1102 (D.C. Cir. 1985) (holding that the dismissal of a back pay claim in light of the Tucker Act "does not create any jurisdictional impediment to our review" of a plaintiff's remaining claims that seek non-monetary relief).

Nothing in the record establishes the amount of Mr. Kursar's back pay and allowances request. Mr. Kursar's complaint, as noted, is nondescript on this matter. It requests no specific amount of back pay or allowances; it does not even explain what these allowances are. *See* J.A. 78–79. Nor does the complaint specify the number of years for which Mr. Kursar is seeking back pay or what his pay level would have been during those years. *See* J.A. 78–79. *Contrast Doe*,

753 F.2d at 1101 (finding that plaintiff's complaint unquestionably established that back pay would exceed $10,000 where plaintiff was "a GS-14 attorney earning approximately $45,000 a year" who had been "discharged over two years before she brought this lawsuit").

To the extent Mr. Kursar's complaint suggests anything, it is that his damages remedy may be below $10,000. Mr. Kursar never alleges that he served full time as an active-duty member of the Army during the relevant time periods. Instead, he has been an Army Reservist since the 1990s, with only brief, part-time stints in the California and Washington National Guards. *See* J.A. 18–27, 43–44. Unless deployed on active duty, Army Reservists generally work, at most, one weekend a month and one two-week period per year. *See* Army Reg. 140-1, § 3-17(c) (requiring fourteen days of annual training); *id.* at § 3-4 (requiring at most 48 annual four-hour unit training assemblies for certain Army Reservists); Army Reg. 135-91, § 3-1 (same). On top of that, Mr. Kursar previously sought reinstatement only as a control group member of the Individual Ready Reserve, *see* J.A. 23, 39, and that status would involve just fourteen to thirty days of active duty training a year, *see* 10 U.S.C. § 10147; J.A. 47 (referencing a commitment to train "two days a month"). In addition, Mr. Kursar's complaint says that he already received some of the back pay he originally sought due to Correction Board orders in 2012 and 2016, J.A. 37–38, 41, which would further decrease the amount he could be seeking in this case, were he to prevail.

In short, nothing within the four corners of the complaint settles the amount of monetary relief Mr. Kursar seeks, and we are limited to the complaint—not Mr. Kursar's litigation conduct—in determining that amount and thus our jurisdiction. *Cf. Tootle v. Secretary of Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006) ("[W]here the jurisdiction of the court turns on whether the complaint seeks monetary relief, the court must generally limit itself to the four corners of the complaint."); *id.* (ignoring representations plaintiff made in "subsequent filings" because "the court should consider only the complaint itself in determining whether money damages have been requested"); *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) (same); *Wolfe v. Marsh*, 846 F.2d 782, 783–785 (D.C. Cir. 1988) (*per curiam*) (same); *see also Rudometkin v. Wormuth*, No. 23-5088, 2024 WL 5165697, at *2–3 (D.C. Cir. Dec. 19, 2024) (*per curiam*) (unpub.) ("[W]e will not roam beyond the four corners of the complaint" in determining whether a claim triggers the Tucker Act.) (quotation marks omitted). Anyhow, even looking beyond the complaint, nothing else in the record settles the amount of monetary compensation that Mr. Kursar seeks either.

Mr. Kursar's counsel was unable to provide any clarification of the dollar amount at oral argument. *See* Oral Arg. Tr. 5:5–7 (Q: "Do you know how much the dollar value [is] of the back pay that is requested here?" A: "No, Your Honor."); *id.* at 7:15–20 (A: "I think there's probably different numbers [of back pay sought] that you could arrive at, depending on * * * other decisions that would have been made by the [Correction] Board."); *id.* at 7:22–8:7 (Q: "[W]e don't have jurisdiction to hear this appeal at all * * * if this [back pay request] is under [$]10,000 or flat with [$]10,000. * * * So how do we know we have jurisdiction?" A: "I definitely appreciate the Court's dilemma on that. I don't have an answer for the Court.").

Mr. Kursar attempts to skirt this problem by arguing that his claim for back pay and allowances seeks "constructive and equitable relief under the authority of 10 U.S.C. § 1552, not

3

under the authority of a money-mandating statute" subject to the Tucker Act or Little Tucker Act. Kursar Opening Br. 21. That argument is squarely foreclosed by precedent. *See Schwalier*, 734 F.3d at 1222 ("[Plaintiff's] request for back pay * * * is unambiguously monetary in nature[.]"); *id.* (describing 10 U.S.C. § 1552, on which Mr. Kursar relies for relief, as "an Act of Congress we have held can fairly be interpreted as mandating compensation by the Federal Government") (quotation marks omitted).

The Secretary's solution is no better. He argues that the district court lacked jurisdiction over Mr. Kursar's back pay and allowances claim, but he urges this court to ignore any jurisdictional issues below because "the only claim at issue on appeal" is Mr. Kursar's challenge to the Correction Board's denial of his request to have his Special Forces Tab reinstated. Secretary Br. 23–26. The problem is that nowhere in the district court did Mr. Kursar forswear his claim for back pay and allowances. Nor has he asked this court for a remand to allow him to dismiss his monetary claims. So if Mr. Kursar seeks $10,000 or less, we lack appellate jurisdiction regardless of what claim is pressed on appeal. And if Mr. Kursar's requested back pay and allowances were to amount to more than $10,000, this court could not blink away the district court's lack of jurisdiction over the back pay and allowances request when it entered summary judgment on that claim.

The dissenting statement urges us to "move this litigation along" by holding that Mr. Kursar waived or forfeited jurisdiction under the Little Tucker Act before the district court and on appeal. Dissenting Statement 1–2. While we share the dissenting statement's preference for efficient litigation, that interest does not empower us to ignore the bounds Congress has set on our jurisdiction. The "[f]ederal courts are courts of limited jurisdiction[,]" constrained to adjudicate only those "cases that Congress grants them power to hear." *T. M. v. University of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1746 (2026) (quoting *Hain Celestial Group, Inc. v. Palmquist*, 146 S. Ct. 724, 728 (2026)). Parties cannot by design or by accident vest this court with jurisdiction that Congress has withheld. And characterizing this as a problem of "waive[r] or forfeit[ure,]" Dissenting Statement 1, does not work either as long as Mr. Kursar has not dismissed his asserted claim for monetary damages from the United States and so, if he were to prevail on appeal, he would be entitled to pursue such relief.

The dissenting statement alternatively proposes finding as fact that Mr. Kursar "want[s] to seek more than $10,000 in backpay[,]" pointing to one line in Mr. Kursar's opening brief and his attorney's representations at oral argument. Dissenting Statement 1–2. But even were we inclined to look beyond the complaint's silence regarding the amount, neither the brief nor counsel's statement clarifies things. The cited line in Mr. Kursar's opening brief says: "This Court has jurisdiction to hear this case, which does not fall under the Tucker Act or the Little Tucker Act." Kursar Opening Br. 16. That makes no sense. Mr. Kursar has never dismissed his remedial request for back pay and allowances, and the amount he seeks necessarily must be either more than $10,000 (Tucker Act) or less than or equal to $10,000 (Little Tucker Act). There is no third alternative since, as noted earlier, Mr. Kursar's alchemical effort to turn back pay into "equitable relief" fails. *Id.*

4

Mr. Kursar's attorney's statement at oral argument that he "think[s] that" this court lacks jurisdiction over his back pay and allowances relief "in terms of the amount of money[,]" Oral Arg. Tr. 5:15–16, was negated by his following statement that he "do[es]n't have an answer for the Court" on whether Mr. Kursar seeks more than $10,000, *id.* at 7:21–8:7. Which leaves us where we started:   a court in search of a basis for jurisdiction.

Because neither this court's nor the district court's jurisdiction can be determined from the complaint or record, we remand to the district court to determine the amount of back pay and allowances Mr. Kursar seeks and, in light of that finding, to determine its own jurisdiction.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk

5

KATSAS, *Circuit Judge*, dissenting: Alexander Kursar brought this suit to compel the Army Board for Correction of Military Records to award him a special-forces qualification. His complaint asserts eight claims for equitable relief, as well as a backpay claim for service that Kursar might have completed if he had special-forces status. The district court granted summary judgment to the Board on all these claims. My colleagues decline to review any of them, instead remanding for an amount-in-controversy determination that has no bearing on the sole theories of original and appellate jurisdiction that Kursar pressed below and here. In my view, our appellate jurisdiction is secure, and we should exercise it to (1) resolve Kursar's equitable claims on the merits and (2) hold that the district court incorrectly exercised original jurisdiction over his backpay claim.

For claims against the government, Congress has created different litigation tracks depending on whether a plaintiff seeks equitable relief or damages. For equitable claims, the plaintiff may proceed in district court by invoking the sovereign-immunity waiver in the Administrative Procedure Act, which applies to claims "seeking relief other than money damages." 5 U.S.C. § 702. But for claims seeking money damages, the plaintiff generally must invoke sovereign-immunity waivers contained in either the Tucker Act or the Little Tucker Act. The Tucker Act gives the Court of Federal Claims jurisdiction over claims against the government for "liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Little Tucker Act gives the district courts concurrent jurisdiction over such claims "not exceeding $10,000 in amount." *Id.* § 1346(a)(2). Normally, the regional circuit courts may review final district-court decisions. *Id.* § 1291. But when a district court's jurisdiction "was based, in whole or in part" on the Little Tucker Act, the Federal Circuit has exclusive appellate jurisdiction to review its decision. *Id.* § 1295(a)(2).

Theories of jurisdiction may be waived or forfeited. After all, federal courts must presume that they lack jurisdiction unless the plaintiff or appellant proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799). So while courts must themselves raise and resolve any possible argument *against* their own subject-matter jurisdiction, "arguments *in favor* of subject-matter jurisdiction can be waived by inattention or deliberate choice." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) (emphasis added); *see also*, *e.g.*, *Bronner ex rel Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 611–12 (D.C. Cir. 2020); *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019); *Gov't of Manitoba v. Bernahrdt*, 923 F.3d 173, 179 (D.C. Cir. 2019). And if a theory of original jurisdiction is never asserted—by the parties or the district court—then the district court's jurisdiction cannot fairly be said to rest "in whole or in part" on it. 28 U.S.C. § 1295(a)(2).

In this case, Kursar never invoked the Little Tucker Act as a basis for district-court jurisdiction over his backpay claim. To the contrary, his complaint invoked only the APA as the basis for overcoming federal sovereign immunity and thus establishing district-court jurisdiction. *See* ECF Doc. 30, Second Am. Compl., at 2. Moreover, throughout this appeal, Kursar has steadfastly disavowed any other jurisdictional theory. His opening brief stated unequivocally that his backpay claim "does not fall under … the Little Tucker Act." Appellant's Br. at 16. And at oral argument, Kursar confirmed that he does *not* want to invoke the Little Tucker Act, because he *does* want to seek more than $10,000 in backpay. Specifically, Kursar stated that, if the

1

backpay claim were not equitable, then it would need to be filed in the Court of Federal Claims. *See* Oral Arg. Tr. at 5:8–6:17. Because Kursar's backpay claim does not rest at all on the Little Tucker Act, section 1295(a)(2) does not channel appellate review to the Federal Circuit, and section 1291 thus secures our jurisdiction. And because Kursar affirmatively wants to avoid pressing his backpay claim in a jurisdictional posture limiting his recovery to $10,000, a remand— for him to disavow the Little Tucker Act once again—would serve no purpose.

In the district court, Kursar pressed only one theory of jurisdiction for his backpay claim— that it is an equitable claim reviewable through the APA, rather than a damages claim subject to the Tucker Act or the Little Tucker Act. As the Court explains, our precedent squarely forecloses that jurisdictional theory, for we have held that a backpay claim is "unambiguously monetary in nature" and thus not litigable in district court through the APA. *Schwalier v. Hagel*, 734 F.3d 1218, 1222 (D.C. Cir. 2013); *Hubbard v. Adm'r, EPA*, 982 F.2d 531, 538 (D.C. Cir. 1992) (en banc). So the district court erred in exercising jurisdiction over the backpay claim (though understandably so, thanks to Kursar's failure to separately address that claim at all in his summary-judgment briefing). Given that error, I would vacate the judgment insofar as it resolves the backpay claim and remand with instructions to dismiss that claim for lack of jurisdiction. And I would resolve on the merits Kursar's equitable claims, which fall squarely within the APA's sovereign-immunity waiver. This approach would honor our "virtually unflagging" duty to exercise jurisdiction that Congress has given to us. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). And it would move this litigation along, avoiding a remand that will needlessly delay our resolution of Kursar's equitable claims for another year or two, just to make Kursar once again disavow—or permit him to very belatedly invoke—the district court's Little Tucker Act jurisdiction.

2